UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

In re:   Thomas Rusnack,

*Debtor*

Civil No. 8:15-cv-02951-TDC

CARDINAL BANK, N.A.

*Appellant,*

v.

THOMAS RUSNACK

*Appellee.*

ON APPEAL FROM THE UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT
OF MARYLAND

(S. Martin Teel, Jr., Judge)

BRIEF OF APPELLANT

Jeremy K. Fishman, Esq.
Erica T. Davis, Esq.
Axelson, Williamowsky,
Bender & Fishman, P.C.
1401 Rockville Pike, Ste. 650
Rockville, Maryland 20852
(301) 738-7684
Attorneys for Appellant

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION

Appellant, Cardinal Bank, N.A., is a Virginia-chartered  institution, whose parent corporation, Cardinal Financial Corporation, is incorporated under the laws of the Commonwealth of Virginia as a financial holding company whose activities consist of investment in its wholly-owned subsidiaries, including Appellant and George Mason Mortgage, LLC.

Cardinal Financial Corporation owns 100 percent of Cardinal Bank's stock and is the only other entity that has a direct financial interest in the outcome of this litigation.

\_\_/s/ Jeremy K. Fishman, Esq._____
Jeremy K. Fishman, Esq.

# TABLE OF CONTENTS

I.    Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.   Issues Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

V.    Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VI.   Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    The Bankruptcy Court Erred in Finding That The Disputed $20,000.00 in HELOC Advances Were Unauthorized under Virginia Code § 8.3A-403 by Using the Pre-2003 Definition of "Organization". . . . . . . . . . . . . . . . . . 7

      C.    The Bankruptcy Court Erred in Finding that the Debtor Did Not Receive Any Benefit From the $20,000 in HELOC advances and Thus Erred in Finding that Appellant Is Not Entitled to Recover The Advances Pursuant to its Proof of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

      D.    The Bankruptcy Court Erred In Not Overruling Debtor's Objection to Cardinal Bank's Proof of Claim Under the Doctrine of Waiver. . . . . . . . . .13

      E.    The Bankruptcy Court Erred In Not Finding That The Debtor Was Barred From Asserting His Objection to The Proof of Claim Since The Procedures For Making A Complaint Under The HELOC Agreement Were Not Adhered To By The Debtor and Thus Barred by The Applicable Statute of Limitations Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

      F.    Laches Bars Debtor's Specific Objection to the Proof of Claim. . . . . . . . . .19

VII.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

i

## **TABLE OF AUTHORITIES**

*Cases*

*Bd. of Supervisors of Fairfax County v. Sampson*, 235 Va. 516, 369 S.E.2d 178 (1988). . . . . . . 16

*Berman v. Forti*, 323 B.R. 653 (D.Md.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Com. v. Bruhn*, 264 Va. 597, 570 S.E.2d 866 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Creteau v. Phoenix Assur. Co. of N.Y.*, 202 Va. 641, 119 S.E.2d 336 (1961). . . . . . . . . . . . . . 13

*Halifax Corp. v. First Union Nat. Bank*, 262 Va. 91, 546 S.E.2d 696 (2001). . . . . . . . . . . . . . .10

*In re Cotton Yarn Antitrust Litigation*,  505 F.3d 274 (4th Cir.2007). . . . . . . . . . . . . . . . . . . . . 16

*In re Genesys Data Technologies. Inc.*, 204 F.3d 124,  (4th. Cir. 2000). . . . . . . . . . . . . . . . . . . 7

*Link Assoc. v. Jefferson Standard Life Ins. Co.*, 223 Va. 479, 291 S.E.2d 212 (1982). . . . . . . . 14

*Massie v. Blue Cross & Blue Shield of Virginia*, 256 Va. 161, 500 S.E.2d 509 (1998). . . . . . . . 16

*Order of United Comm'l Travelers v. Wolfe*, 331 U.S. 586 (1947). . . . . . . . . . . . . . . . . . . . . . . 15

*Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust*, 243 Va. 53, 413 S.E.2d 599 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18,19

*Virginia–American Water Co. v. Prince William County Serv. Auth.*, 246 Va. 509, 436 S.E.2d 618 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337, 714 S.E.2d 922 (2011). . . . . . .10

*Statutes*

15 U.S.C. § 1666. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

15 U.S.C. §1666j(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VA Code Ann. § 8.1A-201(25). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,9

VA Code Ann. § 8.1A-201(27). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,10

VA Code Ann. § 8.1A-201 (28). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7,9

VA Code Ann. § 8.3A-403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . .1,5,6,7,8

*Miscellaneous*

1992 Virginia Laws Ch. 693 (S.B. 101). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

2003 Virginia Laws Ch. 353 (H.B. 1778). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .8

## I.   STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 158, this Honorable United States District Court has subject matter jurisdiction over the instant case which arose after the entry of a final order of the United States Bankruptcy Court for the District of Maryland on September 18, 2015, and which was timely appealed by Appellant to this Honorable Court on October 1, 2015.

## II.   ISSUES PRESENTED

1.   Whether the Bankruptcy Court committed an error of law or abused its discretion in the Order Sustaining Objection to Claim and related memorandum, disallowing Twenty Thousand Dollars ($20,000.00) of Appellant's Proof of Claim, by relying on the pre-2003 definition of "Organization" under Virginia Code § 8.1A-201 by finding that two (2) honored checks for Ten Thousand Dollars ($10,000.00) were unauthorized under Virginia Code § 8.3A-403?

2.   Whether the Bankruptcy Court erred or abused its discretion in finding that the Debtor did not benefit from the $20,000.00 in Home Equity Line of Credit (hereinafter "HELOC") advances paid to Ms. Rusnack (his now ex-wife) and thus finding that Appellant is not entitled to recover for said advances pursuant to its Proof of Claim?

3.   Whether the Bankruptcy Court erred or abused its discretion by not finding that the doctrine of waiver precluded Debtor's objection to Appellant's Proof of Claim?

4.   Whether the Bankruptcy Court erred or abused its discretion by not finding that the Debtor was barred from asserting his objection to the proof of claim since the procedures for making a complaint under the HELOC agreement were not adhered to?

5.   Whether the Bankruptcy Court erred or abused its discretion by not finding that the doctrine

1

of laches barred Debtor's objection to Appellant's Proof of Claim, as he waited over six (6) years to pursue any action against Appellant?

## III.   STATEMENT OF THE CASE

Thomas W. Rusnack ("Debtor" or "Appellee") filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the District of Maryland on July 16, 2014. On September 12, 2014, Appellant, Cardinal Bank, the holder of a Note which is secured by a deed of trust on the Debtor's real property located at 3821 Gelding Lane Olney, Maryland 20832, filed an Objection to Confirmation of Plan.  On or about September 10, 2014, Cardinal Bank filed its Proof of Claim in the amount of $70,804.90 for a debt on a Home Equity Line of Credit ("HELOC") account, which had matured on or about August 4, 2013, prior to the filing of the Debtor's bankruptcy petition.

On September 29, 2014, the bankruptcy court entered an Order denying Confirmation of the Chapter 13 Plan with leave to amend. On December 15, 2014, the bankruptcy court entered an Order With Notice Dismissing the case because of the Debtor's failure to amend the plan, and notice was issued stating that the automatic stay was terminated.  On December 29, 2014, the Debtor filed an amended Chapter 13 Plan and an Objection to Cardinal Bank's Proof of Claim, alleging that the Debtor only owed a maximum of $50,674.06 on the HELOC account.  The bankruptcy action was reinstated on December 30, 2014.

On May 19, 2015, hearing was held in front the Honorable Thomas J. Catliota, on the objection to the Proof of Claim and on the confirmation of the Amended Plan to which Appellant objected, and the Amended Plan was denied with leave to amend.  The debtor failed to timely amend the Amended Plan, and as a result, the bankruptcy was dismissed a second time June 17, 2015.  The Debtor filed a Second Amended Plan and Motion to Vacate the dismissal on June 22, 2015, and the

bankruptcy was again reinstated on June 24, 2015.  Appellant filed an objection to the Second Amended Plan.

In 2015, the Debtor requested that the bankruptcy court adjudicate transactions that took place in 2006. The Debtor objected to Appellant's Proof of Claim alleging that Appellant honored two checks, each in the amount of $10,000, presented by Debtor's then wife, Analisa Rusnack, on or about July 26, 2006 and September 8, 2006. At that time, both the Debtor and Analisa Rusnack ("Ms. Rusnack") were individually authorized to draw funds on the HELOC. On January 26, 2015, Cardinal Bank filed its Opposition to Debtor's Objection to Proof of Claim. On July 14, 2015, a hearing was held before the Honorable Judge S. Martin Teel, Jr., where testimony was taken. The bankruptcy court took the testimony and arguments under advisement, and a new hearing date was scheduled for August 11, 2015, at which time Judge Teel denied confirmation of the Second Amended Plan without leave to amend and a show cause order was issued.  The Debtor filed a Motion to Vacate same which was subsequently granted.  On September 18, 2015, the Honorable Judge Martin S. Teel, Jr., entered an Order Sustaining Objection to Claim and Setting Hearing to Determine Allowed Amount of Claim, with an accompanying Memorandum Decision Sustaining Objection to Claim.  Cardinal Bank thereafter timely appealed to this Honorable Court on October 1, 2015.

## IV.  STATEMENT OF THE FACTS

On August 4, 2003, the Debtor and his then-wife, Analisa Rusnack, took out a HELOC at Cardinal Bank. The HELOC account was opened as an Equity Line Consumer Open End Agreement with a credit limitation of $154,305.10. The agreement concluded with a notice that: "If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60

days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights." [See Record, P161]   The law applicable to the HELOC agreement is Virginia Law as stated therein.  [See Record, P161]

Pursuant to the HELOC, the Debtor and Ms. Rusnack were issued checks upon which they could draft and draw against the account.  On June 22, 2006, the Debtor sent a letter to Cardinal Bank requesting that the bank place a freeze on the credit line. On the same day, Cardinal Bank sent a letter back to the Debtor stating that a freeze had been placed on the account, and that "if you need us to honor an item or release the freeze, both of your signatures will be required." [Record, P317]

On July 26, 2006, and September 8, 2006, Ms. Rusnack wrote two checks each in the amount of $10,000.00 to be drawn from the HELOC account, both of which were honored by Cardinal Bank.  [Record, P168] On October 2, 2006, Cardinal Bank sent a letter to Ms. Rusnack stating that "these two checks were inconsistent with the prior notification that no further withdraws were to occur on the account," and demanded payment from Ms. Rusnack.  [Record, P319] Cardinal Bank continued to issue monthly statements reflecting the withdrawals to the Debtors.

For over six (6) years,  the Debtor continued to make interest payments on the full amount of the outstanding principal balance of the HELOC account without objection.  The Debtor disputed the payments verbally via telephone sometime in October, 2010, over four years after the subject HELOC advances were made.  [Record, page 79:9] Furthermore, the Debtor never objected to said $20,000.00 advances **in writing** as required by the HELOC agreement until 2013 when he filed a complaint with the Office of Consumer Protection for Montgomery County, Maryland (*emphasis added.)*  [Record, P78-80]

After Cardinal Bank filed its Proof of Claim and the Debtor filed his objection, a hearing was held on July 14, 2015, where testimony was taken from the Debtor, Analisa Rusnack, and William

4

O'Connor, a senior credit officer at Cardinal Bank.  The Debtor testified that he verbally informed Appellant that advances were made during the freeze period.   [Record, P35,69]  Ms. Rusnack testified that the amount in question went into their joint account to settle debts, payments, and bills, accumulated jointly as a married couple.   Additionally, there was also testimony that on or about August 9, 2007, both the Debtor and Ms. Rusnack requested an additional withdrawal of $6,000 against the HELOC account.   [Record, page P35]

The Debtor continued to pay the HELOC, despite allegedly promptly notifying Cardinal Bank that it wrongfully authorized two checks drawn by Ms. Rusnack. The Debtor and Ms. Rusnack were granted a divorce on February 29, 2008. Between 2013 and 2015, the Debtor filed complaints with the Office of Consumer Protection of Montgomery County, Maryland, the Bureau of Financial Institutions of the Virginia State Corporation Commission, and the State of Maryland Department of Labor and Licensing.  [Record, P78]   Testimony was taken that these administrative agencies took no action against Cardinal Bank.  [Record, P80]

On August 11, 2015, Judge Teel denied confirmation of the Second Amended Plan without leave to amend and a show cause order was issued.  However, on September 18, 2015,  Judge Teel, Jr., entered an Order sustaining the Debtor's objection to Cardinal Bank's Proof of Claim.  The Order's accompanying Memorandum Decision Sustaining Objection to Claim stated that the honoring of the checks by Cardinal Bank were unauthorized under VA Code Ann. § 8.3A-403, that the Debtor's claims were not barred by the applicable statute of limitations, that the Debtor did not benefit from the withdrawal of the disputed $20,000 amount, that the Debtor was not barred under the doctrine of waiver or ratification, and that the Debtor's objection was not barred, notwithstanding that he failed to notify Appellant in writing within 60 days as required by the four corners of the HELOC agreement.

5

## V. SUMMARY OF ARGUMENT

Judge Teel erred in relying on the pre-2003 definition of "organization," which after the 2003 applied a definition of organization that is not applicable under the circumstances of this claim. The court reached its conclusion that the checks honored by Cardinal Bank were unauthorized since under VA Code Ann. § 8.3A-403 "[i]f the signature of more than one person is required to constitute the authorized signature of an organization, the signature of the organization is unauthorized if one of the required signatures is lacking." Under the current version of the statutes, the definition of neither "person" nor "organization" include language that embraces "two or more persons having a joint or common interest."

The bankruptcy court also erred in finding that the Debtor did not benefit from the $20,000.00 withdrawn from the HELOC since there was testimony from Ms. Rusnack that the money went into their joint account to pay martial debts. Ms. Rusnack's testimony clearly showed that the funds were used to pay marital debts and that there was no evidence offered to the contrary. The bankruptcy court's finding that the Debtor did not benefit from said funds was clearly erroneous, and thus, the bankruptcy court erred as a matter of law in sustaining the Debtor's objection to Appellant's Proof of Claim as to same.

Additionally, the Debtor ratified and waived any objection to the advances made by Cardinal Bank by authorizing additional withdrawals from the HELOC account, by continuing to pay interest on the entire outstanding unpaid principal balance, and by not filing any complaint with an administrative agency until at least 2013. Moreover, the Debtor also failed to assert a claim against Ms. Rusnack during their divorce in 2007 and 2008. The bankruptcy court also erred in not finding that the Debtor's claims were barred by laches and by not finding that the parties contractually agreed to shorten the limitations period.

6

## VI. ARGUMENT

### A.    Standard of Review

An appellate court reviews a bankruptcy court's conclusions of law *de novo*, whereas findings of fact may be set aside only if clearly erroneous. *In re Genesys Data Technologies. Inc.*, 204 F.3d 124 (4th. Cir. 2000). *See also Berman v. Forti*, 323 B.R. 653, 655 (D.Md.1999).

### B.    The Bankruptcy Court Erred in Finding The Disputed Charges Were Unauthorized under Virginia Code § 8.3A-403 By Using the Pre-2003 Definition of "Organization"

The HELOC agreement is governed by Virginia Law as set forth in Paragraph 19 of same.

**[See Record, P161]**   The Bankruptcy Court erred in relying on the pre-2003 definition of "organization" under the Virginia Code 8.1A-201.   In the 2003 amendments of Virginia Code 8.1A-201, the definition of "organization" omitted the reference to "two or more persons who have a joint or common interest."   The bankruptcy court's Memorandum Decision Sustaining Objection to Claim reasoned that:

> "Virginia Code § 8.3A-403 states that where the signature of more than one person is required to constitute the signature of an <u>organization</u> (which covers not only commercial entities but also "two or more persons having a joint or common interest" under 1-201(28) of the Virginia Code), and if a required signature is lacking, the signature of the organization is unauthorized. Because both the debtor's and Ms. Rusnack's signature were required during the freeze period, the charges signed only by Ms. Rusnack were unauthorized."  [Record, page ?] *Mem. Dec. Sustaining Objection*, at 4 (9/18/15) (emphasis added).

However, Appellant contends that the fundamental meaning of "organization" in Virginia has changed since 2003, and a review of the legislative history of the two Virginia statutes, VA Code Ann. § 8.1A-201(28), which is now VA Code Ann. § 8.1A-201(25), and VA Code Ann. § 8.3A-403, reflects this change.   Specifically, prior to 2003, the definition of "organization" under §8.1A-201(28) was as follows:

> "Organization includes a corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, or association, *two or more persons having a joint*

7

*or common interest*, or any other legal or commercial entity." (Internal quotation marks omitted) (emphasis added).

Thus, Judge Teel's reasoning that "organization" covered not "only commercial entities, but also "two or more persons having a joint or common interest under §1-201(28)," was a correct position prior to 2003.   [Record, P231]  *Mem. Dec. Sustaining Objection*, at 4.   However, as stated above, the current and applicable version of this substantive code provision is VA Code Ann. § 8.1A-201(25).  Said language cannot be found in the current substantive provisions of either §8.1A-201(25) or § 8.3A-403[1].

Prior to the 2003 change, in 1992 Virginia adopted the UCC definitions for its commercial law article pursuant to 1992 Virginia Laws Ch. 693 (S.B. 101).  As part of this enactment, §8.1-201(28) was added, which defined "organization," to include, as stated above, "two or more persons having a joint or common interest," but in 2003, Virginia amended §8.1-201 (pursuant to 2003 Virginia Laws Ch. 353 (H.B. 1778)), to reflect substantive changes made to the UCC in 2003.  Under the 2003 legislation, §8.1-201(28) was renumbered to be §8.1-201(25), and the definition of "organization" was fundamentally changed therein to mean *"a person other than an individual*." (Emphasis added).  The prior definition of "organization" was significantly changed.

---

[1]

Although the Editors' Notes–Uniform Commercial Code Comment–found under the current version of VA Code Ann. § 8.3A-403, concludes by stating, "The definition of "organization" in Section 1-201(28) is very broad. It covers not only commercial entities but also "two or more persons having a joint or common interest", it related to the pre-2003 definition, not the definition applicable in this case.  Hence subsection (b) [of VA Code Ann. § 8.3A-403] would apply when a husband and wife are both required to sign an instrument. Again, this language is not in the statute itself, but in the Editor's Notes section of the statute, which the editors derived from an equivalent Uniform Commercial Code section.  However, when the Uniform Commercial Code ("UCC"), and subsequently Virginia law changed its definition in 2003, the editor's note to § 8.3A-403 did not change to reflect the new changes to the law. This is unmistakably clear since the current Editor's Note makes an explicit reference to 1-201(28), which was the previous location for the definition of "organization" which can now be found in §1-201(25).

Since the current definition of "organization" means a "person other than an individual", the definition of "person" must be discussed.  Under VA Code Ann. §8.1-201(27), a "person" means "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, public corporation, or any other legal or commercial entity." It is critically important to note that the definition of neither "person" nor "organization" under the current version of the statutes include language that embraces "two or more persons having a joint or common interest." This language was legislatively abrogated in 2003.  Since §8.1-201(25) defines "organization" as "a person other than an individual," it follows that an "organization" means everything under the definition of "person," other than an individual, which would thus include a: "corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, public corporation, or any other legal or commercial entity." Neither the Debtor, nor Ms. Rusnack are a corporation, business trust, LLC, a commercial entity, etc., and are thus not included under the term "organization" under VA Code Ann. § 8.1A-201.[2]

Judge Teel, Jr., therefore erred in applying VA Code § 8.3A-403, which states that where the signature of more than one person is required to constitute the signature of an <u>organization</u> and a required signature is lacking, the signature of the <u>organization</u> is unauthorized, since the current definition of "organization" no longer includes "two or more persons having a joint or common interest." It is also clear that the bankruptcy court relied on the old law since Judge Teel makes an explicit reference to VA Code Ann. § 1-201(28), which was amended and renumbered in 2003 to be 1-201(25). It must be noted that the current version of VA Code Ann. § 1-201(28)  relates to the

---

[2] The current Editor's Note to VA Code Ann. § 8.1A-201, and its equivalent under UCC 1-201, states: "25. "Organization."- The former definition of this word has been replaced with the standard definition used in acts prepared by the National Conference of Commissioners on Uniform State Laws."

definition of "present value", not "organization". Thus, Judge Teel applied the wrong Virginia Code provision.

When the Virginia General Assembly adopted the revisions to the UCC in 2003, the only substantive change was the removal of the phrase "two or more persons having a joint or common interest" from the definitions of "organization" and "person" under VA Code Ann. § 1-201(25) and (27). The removal of this language is clear as set forth above. To reiterate, before the 2003 amendments, "organization" included "two or more persons having a joint or common interest", and "person" included "an individual or an organization." However, after the 2003 amendments, "organization" means "a person other than an individual," and "person" means "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, public corporation, or any other legal or commercial entity." When viewing both of the definitions of "organization" and "person" together, both before and after the amendments, it is clear that the only verbiage deliberately moves away from the definition of organization as "two or more persons having a joint or common interest."

Under Virginia law, much like all other states, a canon of statutory construction is that "we assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words." *Halifax Corp. v. First Union Nat. Bank*, 262 Va. 91, 100, 546 S.E.2d 696 (2001). And "when the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337, 714 S.E.2d 922 (2011). *See also Com. v. Bruhn*, 264 Va. 597, 570 S.E.2d 866 (2002) ("As a general rule, a presumption exists that a substantive change

in law was intended by an amendment to an existing statute") (quoting *Virginia–American Water Co. v. Prince William County Serv. Auth.*, 246 Va. 509, 517, 436 S.E.2d 618 (1993). It must be presumed that the Virginia General Assembly intended a substantive change when it omitted "two or more persons having a joint or common interest" from VA Code Ann. § 1-201.

The bankruptcy court erred in applying Virginia Code § 8.3A-403 to this case and relying on the pre-2003 definition of "organization" which no longer includes two or more persons having a joint or common interest.   All of the dates relevant to this action occurred after the 2003 amendments, and thus should be governed by the current version of the Virginia Code, not the pre-2003 law.   In light of the above, the two subject HELOC advances in the aggregate amount of $20,000.00 were not unauthorized under the applicable Virginia Code provision because the Debtor and Ms. Rusnack did not constitute an organization for which two signatures were required.  As such, Appellant is entitled to recover said $20,000.00 pursuant to its Proof of Claim.

**C.     The Bankruptcy Court Erred in Finding that Debtor Did Not Receive Any Benefit From the $20,000 in HELOC Advances.**

The bankruptcy court found that the Debtor did not receive any benefit from the $20,000 in HELOC advances drawn by Ms. Rusnack. The Honorable Judge Teel Jr.'s rationale was that:

> "[the debtor's] testimony on this point was specific and credible. I do not give persuasive weight to Ms. Rusnack's testimony that she assumes she deposited the money into their joint account and assumes she paid joint bills with it. Cardinal Bank offered no evidence which contradicts the debtor's account."[Record, P231] *Mem. Dec. Sustaining Objection*, at 4.

On direct examination, the Debtor's counsel asked Ms. Rusnack: "And if we can I would like to turn to the second page and ask if you can identify what that represents?".  [Record, P46]  Tr. pp. 46/20-22 (7/14/2015). Ms Rusnack answered:

> "Yes. These are two checks that I took money, borrowed money against the home equity line account after I had left the home to use to settle debts, payments, bills that we had accumulated jointly as a married couple."  [Record, P46] Tr. pp. 46-47/23-1 (7/14/2015).

Ms. Rusnack then explained that the two checks were dated July 26, 2006 and September 8, 2006, which are the two checks at issue in this dispute. After being asked if she received the monies from both of the checks, Ms. Rusnack answered, "I imagine what I did was take the money and deposit it into our joint checking account from which I was still paying all of our bills because I continued to handle the marital finances even after I left."   [Record, P47] Tr. pp. 47/11-14 (7/14/2015). And later, when asked whether the two checks went to joint debts, Ms. Rusnack stated that "I'm assuming that's what it went to." [Record, P50] Tr. pp. 50/3 (7/14/2015). Ms. Rusnack's testimony on this point is clear, that she believes the proceeds of the two checks at dispute in this case went to" settle debts, payments, bills that we had accumulated jointly as a married couple." Tr. pp. 46-47/23-1 (7/14/2015).

Moreover, the Debtor's testimony on this point was not specific, contrary to Judge Teel's finding that his testimony was "specific and credible." .   [Record, P231] *Mem. Dec. Sustaining Objection*, at 4. The Debtor was asked twice whether the two checks went to joint debts.  First, on cross-examination, counsel for Cardinal Bank asked the Debtor:

"Q     And are you aware whether those funds were used to pay any joint debts of both you and Ms. Analisa Rusnack?

 "A     No."   [Tr. pp. 33/23-25 (7/14/2015)] [Record, P33]

And on the second question of whether "you have any information or are you aware of whether those funds were used to pay a joint debt of both you and the former Ms. Analisa Rusnack?" the Debtor stated: "I'm not aware of that." Tr. pp. 34/8-10 (7/14/2015) [Record, P34]. The Debtor's testimony was not specific, devoid of detail, and confined to either a one-word or a five-word answer.  More importantly, his testimony on this point does not negate Ms. Rusnack's testimony that

the money went to their joint debts. As she testified, Ms. Rusnack was the one handling the marital

finances, not the Debtor, so the Debtor was not in a position to know whether the money went to

joint debts. Thus, even if it is true the Debtor was not aware whether the money went to pay joint

debts, it does not mean that they were not used in such a manner and that Ms. Rusnack did not

allocate the money to such a cause. The Honorable Judge Teel's assertion that "Cardinal Bank

offered no evidence which contradicts the debtor's account" is inapposite as Cardinal Bank would

have no way of knowing other than from the evidence presented.  And, the evidence and testimony

presented on direct examination (by Debtor's counsel) was that Ms. Rusnack used the funds "to

settle debts, payments, bills that we had accumulated jointly as a married couple."  [Record, P4]

*Mem. Dec. Sustaining Objection*, at 4;  Tr. pp. 46-47/23-1 (7/14/2015). Thus, the Debtor, through

his direct examination of Ms. Rusnack, was the one who presented evidence to support Appellant's

position.  Furthermore, Ms. Rusnack was the only person of the two who had knowledge as to how

the funds were used, i.e. to cover joint marital obligations.

Thus,  given  the  above,  the  bankruptcy court's factual finding that the subject HELOC

advances were not used for the benefit of the Debtor was clearly erroneous.  As such, Appellant is

entitled to recover same in its Proof of Claim.

**D.**     **The Bankruptcy Court Erred In Not Precluding Debtor's Objection to Cardinal Bank's Proof of Claim Under the Doctrine of Waiver.**

Under Virginia law, much like other states, the doctrine of  waiver is "the intentional

relinquishment of a known right, with both knowledge of its existence and an intention to relinquish

it."  *Creteau v. Phoenix Assur. Co. of N.Y.*, 202 Va. 641, 644, 119 S.E.2d 336 (1961).  The

bankruptcy court rejected Cardinal Bank's waiver and ratification argument as without merit due to

the fact the bankruptcy court found that the Debtor  promptly reported the unauthorized charges to

Cardinal Bank.  [Record, P234] *Mem. Dec. Sustaining Objection*, at 7, n.1. However, assuming the Debtor did notify the bank, this fact only strengthens the knowledge component of the waiver doctrine.  In essence, under the Debtor's own testimony, he had knowledge of its existence.

Moreover, the Debtor showed an intention to relinquish the known right when the Debtor and Ms. Rusnack withdrew an additional $6,000 on the HELOC on August 9, 2007, over fifteen (15) months after Ms. Rusnack withdrew the amounts at issue here.  The Debtor also testified that after he allegedly discovered the unauthorized withdrawals, he continued to make payments to Cardinal Bank.  Tr. pp. 34/12-15 (7/14/2015). The Debtor did not make formal complaints until 2014 after using the benefits of the transaction in 2006.   Testimony from Mr. William O'Connor, a senior credit officer at Cardinal Bank, revealed that the complaints to the agencies were "made primarily in 2014. I believe the FDIC claim was placed in March of 2015." [Record, P79] Tr. pp. 79/6-7 (7/14/2015). When asked if there were any claims "to any of these agencies at any point in 2010 to the best of your knowledge?" Mr. O'Connor testified "No".   [Record,P79] Tr. pp. 79/8-10(7/14/2015). Thus, the debtor did not make such complaints until approximately the time he retained counsel to initiate his Chapter 13 Voluntary Petition for bankruptcy in 2014.

The Debtor waited approximately seven years to file any complaint with an enforcement agency after he and Ms. Rusnack withdrew the additional $6,000 on August 9, 2007. The Debtor has also never filed any civil action against Cardinal Bank or against Ms. Rusnack for the allegedly unauthorized withdrawals. The Debtor cannot languish for over half a decade when under his own testimony he was aware of the charges and continued to make payments on the amount withdrawn and later authorized an additional $6,000 withdrawal from the HELOC. *See, e.g., Link Assoc. v. Jefferson Standard Life Ins. Co.*, 223 Va. 479, 291 S.E.2d 212 (1982) (finding that evidence was sufficient to support finding that even if lender misrepresented that it would provide borrower with

100% of the financing for project, conduct of borrower during six and one-half- year delay before borrower acted to rescind the contract constituted acts of waiver and ratification sufficient to waive and ratify any actionable misrepresentation).

Additionally, divorce proceedings were not initiated until November 1, 2007, which was over fifteen (15) months after the allegedly unauthorized withdrawals were made and when the Debtor says he became aware of it. The Debtor and Ms. Rusnack entered into a property settlement agreement which was incorporated into the Judgment of Absolute Divorce granted on February 29, 2008. At no point in time during the divorce proceedings did the Debtor allege a cause of action against Ms. Rusnack or seek an accommodation in their property settlement agreement arising from the allegedly unauthorized charges. In other words, had the Debtor believed that Ms. Rusnack wrongfully used the HELOC for her own benefit despite the freeze on the account, the Debtor had the opportunity in the divorce proceedings to allege it.

Even if the Debtor complained to Cardinal Bank in 2006, which shows knowledge of a known right, his subsequent actions showed a clear intention to relinquish any right he acquired. By (1) continuing to make payments, (2) by authorizing an additional $6,000 from the HELOC account which is not in dispute, (3) by not seeking an accommodation in Mr. and Ms. Rusnack's  property settlement agreement during divorce proceedings or filing a civil suit against Cardinal Bank, and (4) not filing a complaint with an enforcement agency until 2014, the Debtor intentionally relinquished a known right, and thus is barred by waiver and ratification.  As such, Appellant is entitled to recover the subject HELOC advances pursuant to its proof of claim.

**E.      The Bankruptcy Court Erred In Not Finding That The Debtor Was Time Barred From Asserting His Objection To The Proof of Claim Since The Procedures For Making A Complaint Under The HELOC Agreement Were Not Adhered To By The Debtor And The Statute of Limitations For Asserting A Cause of Action Lapsed in 2008.**

15

It is well established that parties to a contract can contractually agree to shorten the limitations period, so long as it is reasonable. *Order of United Comm'l Travelers v. Wolfe*, 331 U.S. 586 (1947) ("a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to less than that prescribed in the general statute of limitations provided that the shorter period itself shall be a reasonable period"); *In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274 (4th Cir.2007) ("As a general rule, statutory limitations periods may be shortened by agreement, so long as the limitations period is not unreasonably short"); and *Bd. of Supervisors of Fairfax County v. Sampson*, 235 Va. 516, 520, 369 S.E.2d 178 (1988) (recognizing that parties to a contract may agree to shorten statute of limitation periods so long as the shortened limitations period is reasonable). Additionally, as the Virginia Supreme Court has stated, "[a] court must give effect to the intention of the parties as expressed in the language of their contract, and the rights of the parties must be determined accordingly." *Massie v. Blue Cross & Blue Shield of Virginia*, 256 Va. 161, 166, 500 S.E.2d 509 (1998) (internal quotation marked omitted).

The subject HELOC agreement at its conclusion contains a provision "Your Billing Rights" that provides the procedures the customer must follow in order to preserve his rights to cite an error or to object to payments made from an account. Under the terms, a customer must contact Cardinal Bank **in writing** within 60 days of the first statement describing the disputed amount. (*emphasis added.)* The HELOC agreement further provides that the Bank must acknowledge the written report within thirty (30) days, unless the alleged error is corrected within that time frame.  Following the alleged unauthorized withdrawals by Ms. Rusnack, Cardinal Bank sent monthly statements to the Debtor.  However, the Debtor failed to provide the required written notice to Cardinal Bank within the sixty day time frame. The Debtor therefore failed to meet the contractual notice requirements which precludes him from subsequently claiming that he is not responsible for the $20,000

withdrawals.

The bankruptcy court below found that the language requiring a written report to Cardinal Bank within sixty days was merely a notice to the Debtor of his rights under the Fair Credit Billing Act, codified in 15 U.S.C. § 1666. The Honorable Judge Teel reasoned that neither the contract language in the HELOC nor the Fair Credit Billing Act states that the Act is the customer's exclusive remedy in disputing incorrect charges. Moreover, he explained that the Act "states explicitly that it does not preempt state law claims except to the extent that law is inconsistent with the Act." *Mem. Dec. Sustaining Objection*, at 9 (citing to 15 U.S.C. §1666j(a)).

However, Cardinal Bank does not assert that the Fair Credit Billing Act preempts state law "with respect to credit billing practices" under 15 U.S.C. §1666j(a). 15 U.S.C. §1666j(a) only relates to a conflict between federal and state laws governing credit billing practices. Instead, Cardinal Bank asserts that the parties contractually agreed to the procedures laid out in the HELOC. The Fair Credit Billing Act does not require that a creditor insert the language found in the HELOC at dispute here. Instead, the parties voluntarily inserted the language and agreed to abide by the terms and procedures laid out in the agreement. One of these procedures was that the Debtor was required to notify Cardinal Bank **in writing** within 60 days after Cardinal Bank sent the first bill on which the problem appeared. This the Debtor did not do. The Debtor cannot now, many years later, dispute a charge in which the proper procedures were not followed under the agreement. He failed to comply with his contractual requirements, and is thus time barred from disputing the subject HELOC advances in his bankruptcy. Even though he may have verbally contacted Appellant, verbal contact is not sufficient, and the HELOC agreement even states: "You can telephone us, but doing so will not preserve your rights." [See Record, P161] Furthermore, the HELOC requires that the Debtor dispute and refuses to pay charges on the HELOC account statements he received. This was not

17

done in writing until 2013 when the Debtor began filing complaints with various governmental agencies aforementioned.  As such, the Debtor is time barred from refusing to pay the HELOC advances at issue now, and he is thus responsible for same.

Moreover, the statute of limitations for breach of contract claims in the State of Virginia is five years**.** Thus, given that the last underlying alleged breach of the HELOC agreement occurred on or about September 8, 2006, the Debtor had until September 7, 2011, to file suit against Cardinal Bank for breach of contract in order to avoid responsibility for the subject HELOC advances.

The Debtor failed to take any such action, and is attempting to now use his bankruptcy to assert affirmative claims that he is otherwise time barred from doing in State court.  The bankruptcy laws were not set up in a manner to effectuate this purpose.  The Debtor is solvent, should not be in bankruptcy to begin with, and has filed the instant bankruptcy in order to avoid responsibility for the debt at issue.  By filing the bankruptcy, the Debtor has effectively shifted the burden of filing the affirmative claim upon Appellant through the subject Proof of Claim to which Debtor can and has objected.  In this way, the Debtor is now disputing the debt without having to file an affirmative lawsuit against Cardinal Bank for breach of contract, a cause of action he is otherwise precluded from asserting due to the applicable Virginia statute of limitations.  It is inappropriate for the Debtor to utilize the bankruptcy laws in order to breathe life back into his alleged cause of action for breach of contract, a cause of action that lapsed seven years ago.

Given the above, Appellant is entitled to recover the subject $20,000.00 in HELOC advances pursuant to its Proof of Claim, as the bankruptcy court erred as a matter of law in its contrary determination.

**F.       Laches Bars Debtor's Objection to Claim.**

The doctrine of Laches applies to bar a claim when the party's neglect or failure to assert a known right or claim for unexplained period of time is prejudicial to the adverse party. *Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust*, 243 Va. 53, 58, 413 S.E.2d 599 (1992). The Debtor testified that he knew shortly after the withdrawals in 2006 on the HELOC had been made, yet the Debtor chose not to take any affirmative legal action to assert a right or claim until December 29, 2014 when the Debtor objected to Appellant's Proof of Claim. The Debtor's delay, and his subsequent actions in continuing making the HELOC payment obligations on the entire outstanding unpaid principal balance without dispute or refusal,  authorizing an additional $6,000 withdrawal which is undisputed, not complaining to an enforcement agency until at least 2013, and allegedly not contemplating the $20,000.00 during his divorce proceedings and property settlement, demonstrates an intention on his behalf to abandon his claim.

Cardinal Bank has been prejudiced by the Debtor's delay; the many years that passed following the subject HELOC advances without a refusal to pay has severely limited its ability to corroborate Ms. Rusnack's recollection that the subject funds were used to pay joint marital debts. In other words, had the Debtor timely disputed and refused to pay said advances within a reasonable period of time, litigation would have been commenced at that time.  However, the Debtor did not dispute and refuse to pay until the loan matured in 2013 at which time he lodged the governmental related complaints.  The delay to dispute and refuse timely has prevented Appellant from obtaining corroboration that Ms. Rusnack used the subject advances for joint marital debts.  Debtor is now effectively utilizing his delay for his own advantage and to the detriment and prejudice of Cardinal Bank, as the Honorable Judge Teel's opinion (in determining that Debtor is not responsible for the subject advances) states that Cardinal Bank has not provided any corroborative evidence supporting

19

Ms. Rusnack's undisputed recollection that she used the funds "to settle debts, payments, bills that we had accumulated jointly as a married couple." Additionally, Debtor's unreasonable delay has caused Appellant to incur significant fees and costs associated with the foreclosure proceedings and this bankruptcy litigation.

As such, given the Debtor's years of unreasonable delay in disputing and refusing to pay the subject HELOC advances, the doctrine of Laches bars him from now objecting to same. Appellant Cardinal Bank is thus entitled to recover same pursuant to its Proof of Claim.

## VII.    Conclusion

For the foregoing reasons, Appellant Cardinal Bank respectfully requests that the Bankruptcy Court's Order Sustaining Objection to Claim be reversed, and render a finding that a Cardinal Bank is entitled to recover the entire amount reflected in its Proof of Claim for the pre-petition arrears.

Respectfully submitted,

AXELSON, WILLIAMOWSKY,
BENDER & FISHMAN, P.C.


By: /s/ Jeremy K. Fishman____
          Jeremy K. Fishman, Esq.
          1401 Rockville Pike, Suite 650
          Rockville, Maryland 20852
          (301) 738-7684
          Counsel for Cardinal Bank



By:      /s/ Erica T. Davis____
          Erica T. Davis, Esq.
          1401 Rockville Pike, Suite 650
          Rockville, Maryland 20852
          (301) 738-7685
          Counsel for Cardinal Bank


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th  day of December 2015, a copy of the foregoing Appellant's Brief and Appendix was mailed postage pre-paid, First Class Mail, to:


Douglas N. Gottron
416 Hungerford Drive, Suite 315
Rockville, MD 20850

Timothy P. Branigan
14502 Greenview Drive, Suite 506
Laurel, MD 20708


By: /s/ Jeremy K. Fishman____